

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES WREN, #96377-012          *

Plaintiff                                  *

v                                          *          Civil Action No. RDB-13-3756

TIMOTHY STEWART, Warden, et al.    *

Defendants                             *

***

## MEMORANDUM OPINION

In this complaint brought pursuant to *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), federal inmate James Wren is suing defendants for allegedly providing him with inadequate medical care.[1] Defendants, by their counsel, have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF 17) with exhibits to which plaintiff filed an opposition and exhibits. (ECF 22).[2] Defendants have filed a Reply. (ECF 23). The matter is ripe for disposition. After review of the pleadings, exhibits, and applicable law, the Court determines that a hearing is unwarranted. Local Rule 105.6 (D. Md. 2014). For the reasons to follow, Defendants' motion, construed as a Motion for Summary Judgment, will be GRANTED and judgment will be ENTERED in favor of Defendants.

---

[1] Mindful that Wren is a *pro se* litigant, this Court construes his pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Gordon v. Leeke*, 574 F.2d 1147, 1153 (4th Cir.1978), as alleging an Eighth Amendment violation with respect to medical care. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395–96 (1971) (holding that claims of personal liability for violations of constitutional rights may be maintained against individual federal officers and employees); *Carlson v. Green*, 446 U.S. 14, 21 (1980) (extending *Bivens* to Eighth Amendment claims).

[2] Notice of Defendants' dispositive motion and the opportunity to file affidavits and records in response were sent to Wren pursuant to the requirements of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF 18).

**BACKGROUND**

The facts are viewed in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Wren is a seventy-seven year old inmate at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland"), who been in custody of the Federal Bureau of Prisons (BOP) since July 13, 1992, serving a life sentence. (ECF 17, Ex. 1-2). Wren brings his claims against BOP employees Timothy Stewart, Warden of FCI-Cumberland, prison physician Mohamed Moubarek, MD, Nguyen Thao, a physician's assistant, Richard W. Shook, RN, and Allison D. Smith-Foote, RN, in their official and personal capacities.

Wren faults Dr. Moubarek ("Moubarek") for: 1) unnecessarily changing his medication regimen; 3) cancelling medical procedures (cataract surgery) without justification; 2) prescribing medication to which he has been known to suffer allergic reactions; 3) retaliating against him by requiring that he wait on a "pill line" three times daily for medication; 4) misusing medication and using him as a "guinea pig"; 5) ordering unnecessary procedures (ordering a cardiac stent and changing blood pressure medication) and cancelling others (cataract surgery) without justification; and 6) failing to consult him as to why he needed a cardiac stint implanted.[3] (ECF 1). Wren claims the stent "has done nothing" to alleviate or stop his chest pain and causes extreme pain in his right leg, making it difficult to walk. *Id.* pp. 2-3, 6; ECF 13. As redress, Wren asks for "[i]njunctive relief as to all medical needs." (ECF 3 p. 3; ECF 1, pp. 9-14; ECF 13).

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted

---

[3] Wren does not allege that he did not consent to the procedure which was performed at Western Maryland Health System. (ECF 17, Ex. 2 ¶ 11).

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a) (emphasis added). Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club*, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)). The court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor. *Scott v. Harris,* 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted). At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott* 550 U.S. at 380 *see also Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009).

This Court is mindful that pleadings filed by *pro se* litigants must be liberally construed. *See Erickson v.* Pardus, 551 U.S. 89, 94 (2007). The requirement of liberal construction does not mean this court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). The existence of

a genuine issue of material fact cannot be assumed where none exists. Fed.R.Civ.P. 56(c).

## DISCUSSION

Defendants seek summary judgment in their favor on five grounds: 1) failure to exhaust administrative remedies; 2) injunctive relief is not available under *Bivens;* 3) the claims against Defendants in their official capacities are construed against the United States, and sovereign immunity has not been waived; 4) failure to establish an Eighth Amendment claim; and 5) qualified immunity. (ECF 17).

### A. DEFENDANTS' EXHIBITS

#### 1. MEDICAL CARE

Dr. Moubarek is the Clinical Director at FCI-Cumberland, and the physician primarily responsible for the medical care provided to inmates. (ECF 17, Ex. 2, ¶ 2). He attests in his declaration that no medical staff at FCI-Cumberland acted with indifference to Wren's medical needs. *Id.* ¶75. The declaration is summarized as follows. FCI-Cumberland inmates are each assigned a physician's assistant who acts as a primary care provider (PCP). *Id.* ¶ 4. The PCP sees inmates when they first schedule care in the FCI-Cumberland Health Services Department, and determines whether the inmate's condition warrants further evaluation by a physician. *Id.* Inmate medical records are continually reviewed by physicians. *Id.* An inmate presenting with a medical emergency is seen immediately. *Id.*

Wren arrived at FCI-Cumberland on May 2, 2011, and the medical staff reviewed his documented history of hypertension, coronary artery disease, and other chronic health conditions. *Id.* ¶ 7. The staff noted that Wren had reported "intolerance to several medications including sulfa drugs, cephalosporins, Enalapril Maleate, Lisinopril, and Nifedipine," to medical providers at the Federal Correction Institution, El Reno ("FCI-El Reno"), the facility where he

4

was housed prior to his transfer to FCI-Cumberland, *Id.* ¶ 8. FCI-El Reno staff did not corroborate this report or indicate that Wren was found to be allergic to any medication or had experienced an allergic reaction. *Id.*

Two days later, on May 4, 2011, Wren's blood pressure reading measured abnormally high (188/95)), and he was placed on the "pill line" so that his blood pressure and intake of medication could be more closely monitored. *Id.* ¶ 9. On May 28, 2011, Wren underwent a cardiac catheterization on his right groin area at Western Maryland Health System, and monitored by FCI-Cumberland medical staff afterwards for possible complications. *Id.* ¶¶ 11, 13-14. On September 13, 2012, Wren underwent surgery for a left femoral artery stent, and received medical follow-up care. *Id.* ¶¶ 53-55.

According to Moubarek, Wren has repeatedly refused specific medications prescribed to control his blood pressure. As Wren's blood pressure remained dangerously high, FCI-Cumberland medical staff has prescribed additional medications to control it. Between August 14 and September 17, 2012, Wren's systolic blood pressure measured at 180, 202, 177, 171, 178, and 195 mm Hg. *Id.* ¶¶ 40, 43-45, 49, 54-55; *see also* ECF 17 n. 2.

Wren refused to take his prescribed dosage of Nifedipine on September 14, 2011, claiming side effects, and this medication was replaced with Triamterene/Hydrochlorothizide. *Id.* ¶¶ 16-17. Wren was directed to remain at Health Services for two hours after taking the medication to allow for monitoring, in case of an allergic reaction. *Id.* ¶ 17. On October 25, 2011, this medication was discontinued due to reported side effects. *Id.* ¶¶ 19-22. On August 28, 2012, Wren reported that he was not taking Metoprolol, Minoxidil, or Losartan as prescribed, and refused to take these medications in the future. *See id.* ¶ 48. Wren was prescribed Hydralazine as a substitute. *Id.* When advised to resume taking Metoprolol, Minoxidil, and

Losartan on September 2, 2012, after his blood pressure reading measured abnormally low, Wren refused further treatment with Losartan and Hydralazine. *Id.* ¶ 50. On September 5, 2012, Wren refused Losartan, Minoxidil, Procardia, and Hydralazine, and was provided a prescription for Metoprolol Tartrate. *Id.* ¶ 51. On September 17, 2012, Wren reported that he was not taking Metformin as prescribed, and had never picked it up from the pharmacy. *Id.* ¶ 55. During the same visit, he refused treatment with Minoxidil, Norvasc, and Nifedipine. *Id.* At his December 9, 2012, medical visit, Wren's blood pressure was recorded at the abnormally high level of 212/97 mm Hg. *Id.* ¶ 61. He reported that he stopped taking this medication on his own accord. *Id.* ¶¶ 59-61. On January 4, 2013, Wren was prescribed Doxazosin. *Id.*

Wren's medical records demonstrate that he has been seen several times by FCI medical providers for vision problems. *Id.* ¶¶ 62-73. On March 18, 2013, Wren was seen by an ophthalmologist, who recommended cataract extraction surgery. *Id.* ¶¶ 70-71. The BOP initially denied the surgery because Wren's vision was not worse that 20/60 bilaterally. *Id.* ¶ 72. Subsequently, surgery on Wren's right eye was approved; however, it was not performed due to his continuing serious hypertensive medical issues. *Id.* ¶ 74.[4]

### 2. ADMINISTRATIVE REMEDIES

Defendants' verified exhibits show that during 2003 and 2004, Wren filed administrative claims at the institution level, Regional Office level, and Central Office level, alleging that he was given a drug to which he was allergic while at the Federal Correctional Institution in Beaumont, Texas. (ECF 17, Exh. 1, Attachment B). The claims were denied at all three levels. *Id.* On August 7, 2012, Wren filed administrative claim #699821, alleging that he was denied repair of a blocked artery in his right leg. *Id.* He appealed the Warden's response to the Mid-

---

[4]   Wren has filed a copy of Dr. Wendye VanBrakle, MD's March 18, 2013, Ophthalmology Consultant Report in which cataract surgery is recommended for him. (ECF 22-1, p 27). The report does not reflect whether Dr. VanBrakle was aware of Wren's hypertension or whether his condition was considered in the recommendation.

Atlantic Regional Office on September 25, 2012. *Id.* The appeal was rejected, and Wren resubmitted his appeal to the Regional Office on December 14, 2012. *Id.* The Regional Office closed the resubmitted appeal on February 21, 2013. Wren did not appeal the Regional Office's decision to the Central Office. *Id*; ECF 17, Ex. 3.

On September 13, 2012, Wren submitted claim #704857 at the institution level alleging that medical staff was experimenting with his medications and dosages. (ECF 15, Exh. 1, Attachment B). He appealed the Warden's response to the Mid-Atlantic Regional Office on November 8, 2012, and the Mid-Atlantic Regional Office closed the appeal on February 22, 2013. *Id.*; ECF 17, Ex. 4. Wren did not appeal the Regional Office's February 22, 2013, decision to the Central Office. (ECF 17, Ex. 1, Attachment B). No other administrative requests were filed.

## B. EXHAUSTION DEFENSE

Defendants raise lack of exhaustion as an affirmative defense to Wren's claims. Notably, Wren offers no evidence in dispute. (ECF 22).

An inmate must exhaust all available administrative remedies before filing suit in federal court, pursuant to 42 U.S.C. § 1997e (a) which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Exhaustion of administrative remedies is mandatory. *See Anderson v. XYZ Corr. Health Servs.*, Inc., 407 F.3d 674, 677 (4th Cir. 2005). The requirement "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to file on time, according to the agency's deadlines, is not

"proper exhaustion." *Id.* An inmate's failure to exhaust is an affirmative defense and the burden is on the Defendant to prove the failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citations omitted).

The BOP Administrative Remedy Program requires inmates first to informally resolve complaints with a staff member. 28 C.F.R. § 542.13(a). If informal resolution is unsuccessful, the inmate must file a formal written complaint to the Warden within twenty days from the date on which the basis for the complaint occurred. 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the Warden's response, the inmate may appeal to the Regional Director within twenty days. An inmate who is not satisfied with the Regional Director's response may submit an appeal to the General Counsel within thirty days. 28 C.F.R. § 542.15(a). An inmate has not exhausted his administrative remedies until he has filed his complaint at all levels and received a decision from the Office of General Counsel. *See id.*

A prisoner's claims must be dismissed, unless he has satisfied the administrative exhaustion requirement or has shown that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003). The exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943–44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust

where he "never sought intermediate or full administrative review after prison authority denied relief").

Defendants argue Wren has not filed administrative remedies at all levels concerning the issues raised in this case, and has failed to satisfy the exhaustion requirement. As noted, Wren filed two administrative remedies pertaining to issues raised in the Complaint: 1) that he was denied repair of a blocked artery in his right leg; and 2) medical staff were experimenting with his medication. *See supra,* pp. 6-7. Wren did not appeal the administrative denial of these claims to the BOP Office of General Counsel, and did not exhaust his administrative remedies as required to bring suit in this Court.[5] Accordingly, Defendants are entitled to summary judgment in their favor as a matter of law.

## C. SOVEREIGN IMMUNITY

When an individual is sued in his official capacity, the suit is essentially against the governmental entity. *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985); *Hafer v. Melo,* 502 U.S. 21, 25 (1991) (noting that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). Absent a waiver, it is well established that sovereign immunity shields a governmental entity from suit. *Federal Deposit Ins. Corp. v. Meyer,* 510 U.S. 471, 475 (1994).

> While *Bivens* actions allow for recovery of money damages against federal officials who violate the United States Constitution in their individual capacities, Bivens does not allow for recovery of money damages, or suits in general, against the government itself. . . . [T]he United States has not waived sovereign immunity in suits claiming constitutional torts . . . .

*Reinbold v. Evers,* 187 F.3d 348, 355 n.7 (4th Cir. 1999); *see also Chiang v. Lappin,* RDB-07-

---

[5] The time within which Wren could have appealed these determinations to the BOP Office of General Counsel has expired. (ECF 17, p. 15).

1017, 2008 WL 2945434, at *5-6 (D. Md. July 24, 2008) (plaintiff's *Bivens* claims against defendants in their official capacities dismissed on sovereign immunity grounds). As Wren does not provide evidence sovereign immunity is waived, Defendants are entitled to summary judgment in their favor as to claims against them in the official capacity.

### D. *BIVENS* CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

#### 1. PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF

The remedy in a *Bivens* action is money damages. *See Bivens*, 403 U.S. at 395-97; *Hall v. Clinton*, 235 F.3d 202, 204 (4th Cir. 2000) ("A *Bivens* action is a judicially created damages remedy designed to vindicate violations of constitutional rights by federal actors."). Wren, however, seeks injunctive relief "as to all medical needs" rather than money damages. (ECF 3, p 3). The United States Court of Appeals for the Fourth Circuit ruled that a government official cannot be sued in his or her individual capacity in an action for equitable relief. *See Kirby v. City of Elizabeth*, 388 F.3d 440, 452 n.10 (4th Cir. 2004) (stating injunctive relief could be awarded against the government officials only in their official capacities). Absent a jurisdictional basis for injunctive relief against Defendants in their individual capacities, Defendants are entitled to summary judgment in their favor as to these claims.

#### 2. EIGHTH AMENDMENT CLAIM

To succeed on an Eighth Amendment cruel and unusual punishments claim, a prisoner must prove two elements: "(1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *See Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (citing

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).[6] The objective component is satisfied by a serious medical condition, and the subjective component is satisfied by showing a deliberate indifference by prison officials. *Id.* "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id.* (quoting *Farmer*, 511 U.S. at 844); see *Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Disagreements between an inmate and a physician over the inmate's proper medical care" is not enough to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Russell v Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

---

[6] A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983 and case law involving § 1983 claims applies to *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814–820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

11

Wren has received attentive medical care, including extensive evaluations,[7] outside medical consultations and surgical procedures, medications, and regular monitoring of his medical conditions. Wren disagreed with aspects of his treatment, and medications provided to him may have caused adverse reactions at certain times. When this happened, medications were stopped and alternatives prescribed to address Wren's health concerns. The decision to postpone Wren's cataract surgery was based on safety concerns premised on his high blood pressure. Wren was placed on the "pill line" to more closely monitor his compliance with prescribed medications and blood pressure. Wren provides no facts to support his contention that requiring him to use a "pill line" was retaliatory or vindictive. In sum, the record does not show Defendants acted with subjective deliberate indifference to Wren's serious medical needs. Even when Wren's claims are viewed in light most favorable to him, he does not show requisite subjective deliberate indifference to state an Eighth Amendment medical claim. In other words, there is no demonstrated claim of constitutional magnitude.

## CONCLUSION

For these reasons, this Court finds Defendants are entitled to summary judgment as a matter of law.[8] Summary judgment will be entered in favor of Defendants and against Plaintiff. A separate Order follows this Memorandum Opinion.

SEPTEMBER 22, 2014

_Rll D. Bent_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE

---

[7] FCI-Cumberland medical staff has treated Wren in "at least 93 medical visits" since May 2, 2011. (ECF 17, Ex. 2, ¶¶ 6, 75).

[8] Having determined Defendants are entitled to summary judgment on these grounds, this Court need not reach their qualified immunity defense.